**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bobbie E. Arries, et al., | No. CV 11-08118-PCT-NVW |
| Plaintiffs, | **ORDER** |
| vs. | |
| Navajo County, et al., | |
| Defendants. | |

Before the Court is Defendants' Motion for Summary Judgment on Limited Issues. (Doc. 64.) Plaintiffs' request for oral hearing will be denied because the written briefing is sufficient and oral argument would not aid determination of this motion. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

**I.   Legal Standard for Summary Judgment**

Summary judgment should be granted if the evidence shows there is no genuine dispute about any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party has the burden of showing that material facts are not genuinely disputed. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet this burden, the moving party must point out the lack of evidence supporting the nonmoving party's claim, but need not produce evidence negating that claim. *Id.* at 325.

When the moving party has carried its burden under Rule 56(c), the nonmoving party must show that there are genuine issues of material fact. *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 250 (1986). A material fact is one that might affect the outcome of the suit under the governing law. *Id*. at 248. A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. The nonmoving party must produce evidence to support its claim or defense by more than simply showing "there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The Court must view this evidence in the light most favorable to the nonmoving party, must not assess its credibility, and must draw all justifiable inferences from it in favor of the nonmoving party. *Anderson*, 477 U.S. at 255. Where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue of material fact for trial. *Matsushita*, 475 U.S. at 586.

On summary judgment, the nonmoving party's evidence is presumed true, and all inferences from the evidence are drawn in the light most favorable to the nonmoving party. *Eisenberg v. Ins. Co. of North America*, 815 F.2d 1285, 1289 (9th Cir. 1987); *Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1117 (9th Cir. 2001). But the evidence presented by the parties must be admissible or able to be produced in admissible form. *See* Fed. R. Civ. P. 56(c)(2). Conclusory and speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and to defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

**II.     Facts Presumed True for Summary Judgment**

On February 25, 2009, Plaintiff Bobbie E. Arries ("Arries") signed a Personnel Action Form ("PAF") that stated an effective hire date of March 2, 2009, and a six-month probation period for that position. When Arries signed the PAF, she understood that she was being hired by Navajo County as an Intake Control Specialist with a six-month initial probation period.

At the time that Arries was hired, the following Navajo County employment policies were in effect:

**1.3   EMPLOYEE PROBATION**

**1.31   Policy:**

All new, promoted, demoted, and transferred employees shall be subject to a probationary period. The purpose of the probationary period is to monitor performance as well as to ensure that the employee is effectively learning and performing the duties and responsibilities of the position.

A.   All employee probationary periods are periods of **AT-WILL** employment. Employees serving probationary periods may be terminated <u>with or without cause</u> and without recourse to the grievance process.

. . . .

**1.33   Duration of Probation**

A.   **New Employees**

   1.   The probationary period for any new employee . . . shall be six (6) months.

. . . .

   3.   An employee may be transferred or promoted during a new employee probationary period only with the approval of the current Department Director/Elected Official. In addition, the employee must begin a new 6-month or 12-month probationary period with the new Department.

B.   **Probation for Regular Employees that have been Promoted, Demoted or Transferred**

   1.   Except for those listed below, the probationary period for any employee who has been promoted, demoted, or transferred is three (3) months from the effective date of the action.

. . . .

**1.34   Transfer, Promotion or Demotion during Initial Probationary Period**

A.   Probationary employees who are allowed to transfer, promote, or demote, shall begin a new probationary period beginning the date of change to the new position but shall retain the original date of hire as their anniversary date upon successful completion.

. . . .

**1.35   Completion of Probationary Period**

A.   Two to three weeks prior to the end of the probationary period, the employee's performance shall be evaluated. Based on the

evaluation, the employee's immediate supervisor must determine if the employee's performance warrants successful completion of the probationary period. At this time, the immediate supervisor may recommend that the Department Director or Elected Official take one of three actions:

1. Remove the employee from probation and confirm regular status;

2. Extend the probationary period. See Section 1.33(A)(1) and (2); or

3. Terminate the employment status of the employee.

B. Once the employee successfully completes the probationary period, the employee shall obtain regular status and the date of hire shall become the anniversary date.

C. Upon completion of probation, the employee will be eligible to utilize annual leave which began accruing the date of employment.

D. If the immediate supervisor fails to take any action, i.e. fails to extend the probationary period or fails to terminate an employee on or before the last day of the probationary period, the employee shall be granted regular status by Human Resources.

. . . .

**1.37  GRIEVANCE DURING PROBATION:** Employees on probation are ineligible to file for grievance. (See 4.8 - Grievance Procedures)

Policy 3-26, also in effect during the relevant period, provides:

**I.  PURPOSE**

The Sheriff by virtue of his Office retains the authority to reassign, transfer or promote any employee. Any action taken by the Sheriff will be deemed as betterment of the agency.

. . . .

**IV.  PROCEDURES**

A. Transfer Requests

Only employees who have completed their new hire probationary period may submit transfer requests.

On July 31, 2009, Arries was given a letter of instruction related to noted jail policy violations. On August 15, 2009, Navajo County Jail Lt. Mike Duran signed a memorandum to Navajo County Sheriff K.C. Clark requesting extension of Arries' probation for ninety days for two reasons: (1) being on sick leave for approximately six

- 4 -

weeks prevented her from learning all of the functions of an Intake Control Specialist that normally would have been learned during a six-month probationary period, and (2) on July 31, 2009, Arries was given a letter of instruction for policy violations related to "a verbal confrontation she had with a Detention Officer and not properly documenting the activities of her assigned unit."

On August 19, 2009, Arries signed a form titled "Navajo County Request for Extension of Probationary Period on a New Employee," acknowledging Kelly C. Clark's request to extend Arries' probationary period 90 days because she had not had time to learn all of her duties due to missing work six weeks for surgery. It states that the probationary period is extended to November 22, 2009.

On August 21, 2009, Arries signed a Personnel Action Form that states the probation period is extended three months to November 22, 2009. On August 21, 2009, she also signed a form titled "End of Probation Evaluation," which states that she failed to meet probationary job requirements and recommends her probation period be extended 90 days. Her performance review indicates she met expectations regarding quantity of work, cooperation, reliability, and "other," but did not meet expectations regarding quality of work, conduct, and overall performance.

On October 3, 2009, Arries submitted a signed letter to Navajo County expressing her interest in an open Detention Officer position. On November 12, 2009, Arries signed a PAF that indicated that, effective November 16, 2009, she would be transferred from an Intake Control Specialist position to a new position titled "Detention Officer Cadet (UF II)" with a three-month probationary period and a lower pay rate than her current one. A three-month probation period would have ended February 16, 2010, if she had remained as a Detention Officer Cadet.

Subsequently, someone with the initials "CP" wrote on the November 12, 2009 PAF next to the probation period "S/B 6 mos." In mid-December 2009, emails were exchanged between Navajo County employees regarding changing the probation period on the November 12, 2009 PAF from three to six months because Arries was transferred

1    before her new hire probationary period ended. In one email Cheryl Powell refers to the
2    reference to three months as "our error," and in another email Cheryl Powell requests that
3    the recipient "make the change to the PAF."

4    From November 16, 2009, to December 31, 2009, Arries attended the Arizona
5    Detention Officer's Academy. On December 31, 2009, she took the Detention Officer
6    Oath of Office. On January 2, 2010, Arries began her duties as a Detention Officer I. She
7    testified that she thought that she began a three-month probationary period on December
8    31, 2009, but no one told her that.

9    The PAF prepared on January 4, 2010, and effective January 3, 2010, states that
10   Arries was promoted from Detention Officer Cadet (UF II) to Detention Officer I (UF II)
11   with an increased pay rate. It also states that her probation period is six months. Thus,
12   unless Arries was granted an exception from the general policies, her probation period for
13   the Detention Officer Cadet position would have ended July 3, 2010.

14   Arries testified that she did not write her signature that appears on the January 4,
15   2010 PAF. Arries has submitted a forensic handwriting document expert's report opining
16   that she "very probably did not execute her signature" on the January 4, 2010 PAF.
17   Arries also asserts that Defendants have produced three different versions of the January
18   4, 2010 PAF, but they all show the same signature by Arries; the differences between
19   versions are only with respect to the addition of signatures after hers.

20   On January 27, 2010, Arries submitted a written leave request. On February 13,
21   2010, an Employee Time Accounting Summary was created for Arries, which she signed.
22   It stated, "Because your new hire probation was extended then you transferred to D.O. that
23   changed your end of new hire probation so you can't use Annual time yet. See county
24   policy 1.33 A-3 & 1.34A." On February 25, 2010, Arries submitted a letter addressed to
25   Commander Searles regarding being denied access to her annual leave. In the letter, she
26   requested that an exception or revision be made to "policy 1.33A-3 and 1.34A," which
27   are the policies requiring an additional six-month probationary period upon transfer
28   within the new hire probationary period, because she did not transfer to another

1 department outside of the Navajo County Sheriff's Office. At the time she submitted the
2 February 25, 2010 letter to Commander Searles, Arries believed that she was on
3 probation.

4 On March 18, 2010, Arries signed a Personal Performance Report that indicated
5 she had met expectations in all areas. It also states, "Officer Arries is still on probation
6 but doing a good job." Under "Areas needing improvement," it states, "None at this time,
7 just get off probation." Two goals are identified on the form: "Come off Probation" and
8 "booking in and out." Next to the goals are boxes in which to indicate if the goal has
9 been completed. On the form produced by Defendants, none of the boxes are checked,
10 including the one marked "no." On the form produced by Arries, "yes" is marked next to
11 "Come off Probation" and "part" is marked next to "booking in and out." The Personal
12 Performance Report is not an End of Probation Evaluation Report.

13 On May 5, 2010, Arries was arrested by the Show Low Police Department and
14 booked on charges of embezzlement, theft, and fraud schemes. She was arrested in the
15 parking lot of the Navajo County Jail and booked there. Before the arrest, Sheriff Clark
16 was notified that Arries would be arrested when she came to work at the jail and therefore
17 would not need to be transported or stay at the facility in Show Low.

18 On May 5, 2010, Navajo County terminated Arries' employment, which is
19 reflected on a PAF by only "Termination (new hire probation)." Because she was
20 terminated as a probationary employee, she was not provided the process that is due
21 regular County employees who face termination. Arries' arrest is the event that led to her
22 termination. News of her arrest and corresponding charges was published in the local
23 newspaper. Arries has not seen any publication stating that Navajo County or the Navajo
24 County Sheriff's Office stated that she was terminated because she was arrested or
25 charged with a crime. Subsequently, Arries was indicted on felony charges related to the
26 same allegations upon which she was arrested and charged during the booking process on
27 May 5, 2010.

28

1    Employees of the Navajo County Sheriff's Office talked to each other about
2 Arries' arrest and possible reasons for the arrest and termination. At least two have stated
3 that they were not instructed not to talk about Arries' arrest and termination. When
4 Arries had dinner with two detention officers, they told her that "everyone was talking"
5 about her arrest. A former detention officer has stated that he was told about Arries'
6 arrest and termination and then openly spoke with family members and friends about it.
7 He also said that he observed discussion about Arries' arrest and termination among
8 employees of the Navajo County Sheriff's Office in front of a lieutenant from the Pinal
9 County Sheriff's Office. Arries' father, a commander in the Navajo County Sheriff's
10 Office, said that he was told of Arries' arrest and termination by Sheriff Clark and that he
11 has told his daughter, family members, and several residents of the community who do
12 not work for the Navajo County Sheriff's Office what Sheriff Clark told him about why
13 his daughter was fired.
14    On September 29, 2010, a public records request for Arries' Navajo County
15 personnel file was made through Arries' counsel. At the time, the file contained a one-
16 page form titled "Crime Summary Information," which indicated that Arries had been
17 arrested and booked on two felony charges, fraudulent schemes and theft, on May 5,
18 2010. Under the heading "Facts Establishing Elements of the Crimes" were statements
19 that while she was employed as the office manager for University OB/GYN in Show
20 Low, Arizona, she allegedly embezzled $92,141.11 by paying certain personal expenses
21 and presenting them as legitimate business expenses on the company books. On January
22 26, 2012, all documents referencing Arries' arrest, criminal charges, and/or accusations
23 were purged from Arries' personnel file. Prior to purging Arries' personnel file, the only
24 public records request for the file was the one made by Arries' counsel on September 29,
25 2010.
26    Arries applied for unemployment insurance benefits and responded in writing to
27 questions from the Arizona Department of Economic Security as follows:
28

- 8 -

> WHAT REASON DID THE EMPLOYER GIVE YOU FOR YOUR DISCHARGE?
>
> Cannot complete probation
>
> EXPLAIN WHY YOU FEEL YOU WERE DISCHARGED (PROVIDE DATES).
>
> They did not say.  Only that I could not complete probation
>
> . . . .
>
> IF ADDITIONAL SPACE IS NEEDED USE THE BOTTOM PORTION OF THIS FORM.
>
> My probation had already ended.
> See attached documents

When Navajo County opposed Arries' application for unemployment insurance benefits, it stated: "Ms. Arries was terminated during her at-will probationary period due to being arrested for a felony theft charge.  She was employed as a detention officer at the County Jail.  Please see attached Crime Summary Information form."

On December 23, 2010, Arries' attorney sent a letter to Sheriff Clark and Navajo County Board Supervisors that stated, among other things, that failure to provide Arries with a name-clearing hearing violated due process.  The letter did not request a name-clearing hearing.

### III. Analysis

#### A. Count I:  Violation of Due Process, 42 U.S.C. § 1983

Arries alleges that Defendants violated her Fourteenth Amendment rights by terminating her employment without due process, thereby depriving her of her property interest in continued employment with Navajo County.  Arries alleges that she had a property interest in continued employment with Navajo County because she was a regular, non-probationary employee of Navajo County.  If she was a probationary employee at the time of termination, she did not have a property interest in continued employment with Navajo County and did not have any due process rights.

Navajo County employment policies in effect during Arries' employment provide that all newly hired employees are probationary for six months, probationary periods may

- 9 -

1 be extended, and employees who transfer to a new position during a probationary period
2 begin a new probationary period. Arries' initial probationary period was extended to
3 November 22, 2009. On November 16, 2009, she was transferred from Intake Control
4 Specialist to Detention Officer Cadet. Her new probationary period as a Detention
5 Officer Cadet was presumptively six months, but the PAF said three months. The PAF
6 subsequently was amended to state the probationary period was six months, but whether
7 the period was three months or six months makes no difference. On either December 31,
8 2009, or January 3, 2010, began a new position as a Detention Officer I with a new
9 probationary period of six months. Whether Arries signed forms acknowledging the
10 implementation of Navajo County policies does not affect the operation of those policies.
11 Thus, Arries was a probationary employee as of May 5, 2010, the date of her termination.

12 In February 2010, Arries asked Sheriff Clark to either revise or make an exception
13 from the employment policies that required an additional six-month probationary period
14 upon transfer within the new hire probationary period. Whether Sheriff Clark had
15 discretion to deviate from standard policies and terminate Arries' probationary period at
16 any time before May 5, 2010, is irrelevant because he did not do so. Casual comments he
17 may have made regarding the length of her probation do not constitute a waiver of Navajo
18 County employment policies.

19 Therefore, because Arries was a probationary employee at the time of termination,
20 she did not have a property interest in continued employment with Navajo County and did
21 not have any due process rights to be violated.

### B. Count II: Violation of Liberty Interest, 42 U.S.C. § 1983

23 Arries alleges that Defendants violated her liberty interest by failing to provide her
24 with a name-clearing hearing regarding allegations related to her arrest. She contends
25 that she was stigmatized and her reputation harmed by the local newspaper publishing
26 information about her arrest, other detention officers speaking to each other and to non-
27 employees about her arrest, and the failure to provide her a name-clearing hearing.

"The termination of a public employee which includes publication of stigmatizing charges trigger due process protections." *Mustafa v. Clark Cnty. Sch. Dist.*, 157 F.3d 1169, 1179 (9th Cir. 1998). "A liberty interest is implicated in the employment termination context if the charge impairs a reputation for honesty or morality." *Brady v. Gebble*, 859 F.2d 1543, 1552 (9th Cir. 1988) (internal quotation marks and citation omitted). In order to take advantage of these due process protections, a plaintiff must show: (1) the accuracy of the charge is contested; (2) there is some public disclosure of the charge; and (3) the charge is made in connection with termination of employment. *Mustafa*, 157 F.3d at 1179; *Brady*, 859 F.2d at 1552. In this context, the "charge," *i.e.*, the basis for terminating Arries' employment, is her arrest during a probationary period.

Arries has not shown that any of the named Defendants publicly stated that her employment was terminated because she committed embezzlement and fraud against a former employer.[1] The only public disclosure made by Defendants is the truthful statement from Navajo County to the Arizona Department of Economic Security: "Ms. Arries was terminated during her at-will probationary period due to being arrested for a felony theft charge." The attached Crime Summary Information was the Show Low Police Department's statement regarding Arries' arrest; it was not an expression by Defendants of its grounds for her termination. Arries does not dispute that she was arrested or that her employment was terminated because she was arrested. Thus, whether the criminal charges brought against Arries would impair her reputation for honesty and whether she contests the accuracy of those charges is irrelevant here. Further, no purpose would have been served by holding a name-clearing hearing regarding whether she had been arrested.

---

[1] The local newspaper publication regarding Arries' arrest did not include a statement by Defendants and did not mention her termination. Communication among Navajo County Sheriff's Office employees does not constitute "public disclosure," nor do comments by individual employees to family and friends.

- 11 -

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment on Limited Issues (Doc. 64) is granted.

IT IS FURTHER ORDERED that the Clerk enter judgment in favor of Defendants and against Plaintiffs and that Plaintiffs take nothing on their complaint. The Clerk shall terminate this case.

DATED this 12th day of March, 2012.

_____
Neil V. Wake
United States District Judge